## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOBE DANGANAN,** | **:** | |
| **on behalf of himself and all others** | **:** | **Case No. 15-cv-4035-HB** |
| **similarly situated,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **CLASS ACTION** |
| | **:** | |
| | **:** | |
| **GUARDIAN PROTECTION SERVICES,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

# O R D E R

AND NOW, upon consideration of Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), and, in the Alternative, To Strike Class Allegations Pursuant to Rule 23, and Plaintiff's response in opposition thereto,

IT IS, this ____ day of _____, 2015, HEREBY ORDERED that the Motion to Dismiss and To Strike Class Allegations is DENIED.  Defendant shall file an Answer to the Class Action Complaint in accordance with the Federal Rules of Civil Procedure.

BY THE COURT:

_____

Harvey Bartle, III
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JOBE DANGANAN,** | : | |
| on behalf of himself and all others | : | **Case No. 15-cv-4035-HB** |
| similarly situated, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CLASS ACTION** |
| | : | |
| | : | |
| **GUARDIAN PROTECTION SERVICES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT GUARDIAN PROTECTION SERVICES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6) AND, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 23

Michael D. Donovan
Noah Axler
**DONOVAN AXLER, LLC**
1055 Westlakes Drive, Suite 155
Berwyn, PA  19312
Telephone: 610-647-6067
Facsimile: 610-647-7215
mdonovan@donovanaxler.com
naxler@donovanaxler.com

Christian Schreiber (Cal. Bar No. 245597)
*Pro Hac Vice*
**CHAVEZ & GERTLER LLP**
42 Miller Avenue
Mill Valley, CA  94941
Telephone: 415-381-5599
Facsimile: 415-381-5572
christian@chavezgertler.com

*Counsel for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.      INTRODUCTION ................................................................................. 1

II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS ................................. 3

III.    ARGUMENT ......................................................................................... 6

        A.      Legal Standard ......................................................................... 6

        B.      The Contractual Forum Selection Clause Does Not Require
                Dismissal .................................................................................. 7

        C.      Plaintiff Has Standing to Sue Under The UTPCPL and FCEUA ................. 7

        D.      Guardian Has Contractually Disclaimed Pennsylvania's
                Choice Of Law Rules ............................................................... 11

        E.      Plaintiff Has Stated a Claim Under the UTPCPL and FCEUA ..................... 12

                1.      The Complaint Contains Sufficient Allegations of
                        Deceptive Conduct ....................................................... 12

                2.      Guardian Misstates the Pleading Standard for Reliance ................... 15

                3.      Plaintiff Has Pled An Ascertainable Loss ........................................ 20

        F.      Plaintiff's FCEUA Claim Is Adequately Pled ............................... 20

        G.      It is Premature to Strike Class Allegations ..................................... 21

        H.      If the Court Concludes It is Necessary, Plaintiff Should Be
                Granted Leave to Amend .......................................................... 24

IV.     CONCLUSION.................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*In re Actiq Sales & Mktg. Practices Litig.*,
    790 F. Supp. 2d 313 (E.D. Pa. 2011) ................................................................................ 11

*In re Adelphia Commc'ns Corp.*,
    331 B.R. 93 (Bankr. S.D.N.Y. 2005) ................................................................................ 8

*Allen v. Holiday Universal*,
    249 F.R.D. 166 (E.D. Pa. 2008) ................................................................................ 23, 24

*Amica Mut. Ins. Co. v. Fogel*,
    656 F.3d 167 (3d Cir.2011) ................................................................................ 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 6

*Baker v. Family Credit Counseling Corp.*,
    440 F. Supp. 2d 392 (E.D. Pa. 2006) ................................................................................ 8, 9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) ................................................................................ 6

*Belmont v. MB lnv. Partners*,
    708 F.3d 470 (3d Cir. 2013) ................................................................................ 17

*Bennett v. A.T. Masterpiece Homes*,
    40 A.3d 145, 152-56  & n.5 (Pa. Super. 2012) ................................................................................ 13, 15

*Birchall v. Countrywide Home Loans*,
    2009 U.S. Dist. LEXIS 106813 (E.D. Pa. Nov. 12, 2009) ................................................................................ 18

*Brown v. Card Service Center*,
    464 F.3d 450 (3d Cir. 2006) ................................................................................ 6

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ................................................................................ 24

*Carroll v. Stettler*,
    2011 WL 5008349 (E.D. Pa. Oct. 19, 2011) ................................................................................ 23

*Chiles v. Ameriquest Mortg. Co.*,
    551 F. Supp. 2d 393 (E.D. Pa. 2008) ................................................................................ 19

*Christopher v. First Mut. Corp.*,
    2006 U.S. Dist. LEXIS 2255 (E.D. Pa. Jan. 20, 2006) ...................................................... 19

*Commonwealth by Creamer v. Monumental Properties, Inc.*,
    329 A.2d 812 (Pa. 1974) ............................................................................................... 12

*In re Community Bank of Northern Virginia Mortg. Lending Practices Litig.*,
    __ F.3d ___, 2015 WL 4547042 (3d Cir. July 29, 2015) .......................................... 15, 23

*D.P. Enters. v. Bucks County Cmty. Coll.*,
    725 F.2d 943 (3d Cir. 1984) ........................................................................................... 6

*Davis v. Many Life Ins.*,
    2008 U.S. Dist. LEXIS 69736 (W.D. Pa. Sept. 2, 2008) ................................................ 18

*Donohue v. Reg'l Adjustment Bureau, Inc.*,
    2013 WL 1285469 (E.D. Pa. Mar. 28, 2013) ................................................................. 21

*Figard v. PHH Mortg. Corp. (In re Figard)*,
    382 B.R. 695 (Bankr. W.D. Pa. 2008) .......................................................................... 19

*In re Fisher*,
    320 B.R. 52 (Bankr. E.D. Pa. 2005) .............................................................................. 19

*Garland v. ServiceLink L.P.*,
    2013 WL 5428716 (D. Md. Sept. 25, 2013) .................................................................... 9

*Genter v. Allstate Property and Cas. Ins.*,
    2011 U.S. Dist. LEXIS 67840 (W.D. Pa. June 24, 2011) ............................................... 17

*Gidley v. Allstate Ins. Co.*,
    2009 U.S. Dist. LEXIS 118246 (E.D. Pa. Dec. 17, 2009) .............................................. 18

*Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*,
    284 F.R.D. 238 (E.D. Pa. 2012) .................................................................................... 22

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014) .......................................................................................... 24

*Haggart v. Endogastric Solutions, Inc.*,
    2011 WL 466684 (W.D. Pa. Feb. 4, 2011) ...................................................................... 9

*Hammersmith v. TIG Ins. Co.*,
    480 F.3d 220 (3d Cir. 2007) ..................................................................................... 11, 12

*Hansford v. Bank of Am.*,
   2008 U.S. Dist. LEXIS 65502 (E.D. Pa. Aug. 22, 2008)....................................19

*Holt's Cigar Co. v. 222 Liberty Associates*,
   591 A.2d 743 (Pa. Super. 1991).......................................................................14

*Howze v. Jones & Laughlin Steel Corp.*,
   750 F.2d 1208 (3d Cir. 1984)..........................................................................24

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)................................................................................7

*Kaymark v. Bank of Am., N.A.*,
   783 F.3d 168 (3d Cir. 2015).............................................................................20

*Kern v. Lehigh Valley Hosp., Inc.*,
   2015 Pa. Super. 19, 108 A.3d 1281 (2015).......................................................20

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941).........................................................................................12

*Korman v. Walking Co.*,
   503 F. Supp. 2d 755 (E.D. Pa. 2007) ...............................................................21

*Landman & Funk PC v. Skinder-Strauss Assoc.*,
   640 F.3d 72 (3d Cir.2011)................................................................................22

*Lewis v. Ford Motor Co.*,
   263 F.R.D. 252 (W.D. Pa. 2009) ........................................................................8

*Lites v. Great Am. Ins. Co.*,
   2000 WL 875698 (E.D. Pa. June 23, 2000) .......................................................12

*Lorah v. SunTrust Mortg.*,
   2010 U.S. Dist. LEXIS 134325 (E.D. Pa. Dec. 17, 2010) ..................................18

*Lyon v. Caterpillar, Inc.*,
   194 F.R.D. 206 (E.D. Pa. 2000)....................................................................8, 10

*McCusker v. hibu PLC*,
   2015 WL 1600066 (E.D. Pa. Apr. 8, 2015) ........................................................7

*Mertz v. Donzi Marine*,
   2007 U.S. Dist. LEXIS 15708 (W.D. Pa. 2007) .................................................19

*Mikola v. Penn Lyon Homes, Inc.*,
    2008 WL 2357688 (M.D. Pa. June 4, 2008) ........................................................ 9

*Mirizio v. Joseph*,
    2010 Pa. Super. 70, 4 A.3d 1073 (2010) ........................................................ 14

*Moore v. Johnson & Johnson*,
    2014 WL 7740498 (E.D. Pa. Feb. 4, 2014) ........................................................ 8

*Morgan v. World Alliance Fin. Corp.*,
    2013 U.S. Dist. LEXIS 13870 (E.D. Pa. Jan. 31, 2013) ........................................ 17

*Occidental Chem. Corp. v. Envtl. Liners, Inc.*,
    859 F. Supp. 791 (E.D. Pa. 1994) ........................................................ 21

*Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*,
    693 F.3d 417 (3d Cir. 2012) ........................................................ 12

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ........................................................ 6

*In re Plywood Co. of Pa.*,
    425 F.2d 151 (3d Cir. 1970) ........................................................ 14

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
    246 F.3d 289 (3d Cir. 2001) ........................................................ 7

*Sanders-Darigo v. CareersUSA*,
    847 F. Supp. 2d 778 (E.D. Pa. 2012) ........................................................ 7

*Seldon v. Home Loan Servs.*,
    647 F. Supp. 2d 451 (E.D. Pa. 2009) ........................................................ 18

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ........................................................ 18

*Slemmer v. McGlaughlin Spray Foam Insulation*,
    955 F. Supp. 2d 452 (E.D. Pa. 2013) ........................................................ 17

*Thompson v. Merck & Co., Inc.*,
    2004 WL 62710 (E.D. Pa. 2004) ........................................................ 22

*Toth v. Northwest Savings Bank*,
    No. GD-12-008014, 2013 WL 8538695 (C.P. Allegh. Mar. 1, 2013) ........................ 16, 17

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ............................................................................ 20, 23

*Vassalotti v. Wells Fargo Bank, N.A.*,
    732 F. Supp. 2d 503 (E.D. Pa. 2010) ................................................................. 18

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) ................................................................................. 6

*Weiss v. Regal Collections*,
    385 F.3d 337 (3d Cir. 2004) ............................................................................... 22

*Wilson v. Parisi*,
    549 F. Supp. 2d 637 (M.D. Pa. 2008) ............................................................... 19

*Wolfe v. McNeil-PPC, Inc.*,
    773 F. Supp. 2d 561 (E.D. Pa. 2011) ................................................................. 9

*Woodard v. FedEx Freight E., Inc.*,
    250 F.R.D. 178 (M.D. Pa. 2008) ....................................................................... 22

*Zafarana v. Pfizer*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ................................................................. 18

## STATUTES, RULES & REGULATIONS

73 Pa. Stat. Ann. § 2270.2 ....................................................................................... 15

73 P.S. §§ 201-1 - 201-9.2 ................................................................................ 3, 13, 16

73 Pa. Stat. Ann. § 2270.1, *et seq* ........................................................................... 3

28 U.S.C. § 1404(a) .................................................................................................... 7

28 U.S.C. § 1406 ........................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 7

Fed. R. Civ. P. 15(a) ................................................................................................ 24

UTPCPL, 73 Pa. Cons. Stat. § 201-9.2 .................................................................... 21

FCEUA, 73 Pa. Stat. Ann. § 2270.5(a) .................................................................... 21

## I.    <u>INTRODUCTION</u>

This is a putative class action challenging Defendant Guardian Protection Services' ("Guardian") unlawful contracting and debt collection practices. Plaintiff Jobe Danganan ("Plaintiff") contracted with Guardian to provide home protection services for his house in Washington, D.C. (the "Contract"). After he moved and cancelled his service, Guardian continued to demand and collect unlawful contractual penalties from Plaintiff under the threat of a collection action and adverse credit reporting. Guardian's conduct persisted not only after Plaintiff's cancellation of services, but also after he disputed that payment was owed, and even after Plaintiff paid in full. Plaintiff alleges that Guardian's characterization of these penalties as debts for "contracted security services" was misleading and deceptive under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and that its collection of amounts not owed violates Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA").

Guardian's aggressive customer service practices are also a hallmark of the present Motion to Dismiss ("Motion"). Guardian claims, for example, that Plaintiff's complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because of the existence of a forum selection clause in the Contract, which Plaintiff challenges in the context of his opposition to Guardian's Motion to Transfer this action to the Western District of Pennsylvania. But, Fed. R. Civ. P. 12(b)(6) does not require dismissal even where a court enforces a forum selection clause, and neither judicial economy nor justice would be served here by a dismissal.

Guardian's overstatement about the effect of a forum selection clause is typical of its other arguments, which are just as aggressive and equally unavailing. Perhaps because Plaintiff has plainly alleged facts specific enough to satisfy the pleading standards under the federal rules and to state a claim under the UTPCPL and FCEUA, Guardian's Motion prematurely engages Plaintiff's claims on the merits and on matters more properly the subject of litigation down the road. For example, the adhesion Contract that Guardian drafted provides that "this Agreement shall be governed by the laws of Pennsylvania without giving effect to its conflict of laws rules."

1

Compl., Ex. A, ¶ 19. Yet Guardian now disclaims Pennsylvania law and contends that Plaintiff cannot pursue a class action under these statutes because he is not a resident of the State. Gallingly, after inserting both venue and choice-of-law clauses into its Contract, Guardian now claims that the rights of its customers can be protected only by applying the consumer protection statutes of other states. *See*, *e.g.*, Mot. at 9, 11, n. 5. Guardian's Motion is an unabashed effort to use its Contract as a shield and a sword, which the Court should reject.

Guardian's Motion also asks the Court in a variety of ways to decide both the merits of Plaintiff's claims – and the propriety of class certification – at the pleadings stage. For example, Guardian asks the Court to conclude not only that class certification is impossible (by striking the class action allegations), but also that an action involving a contract cannot, as a matter of law, be deceptive. To accomplish this, Guardian recasts Plaintiff's UTPCPL claims as merely a breach of contract dispute; conflates the pleading standard for causation under the UTPCPL's "catch-all" provision; and disregards Plaintiff's precise allegations about the damages caused by Guardian's deceptive conduct. In each instance, Guardian overreaches. Plaintiff has alleged facts that describe Guardian's deceptive practices, which have resulted in more than 17,000 customers paying off a false debt for "contracted services" that were not provided.

Ultimately, Guardian asks for too much. Striking class allegations at this stage is an extreme remedy disfavored by this Court and by the Third Circuit. The time for the Court to address the propriety of Plaintiff's class action allegations is at the class certification stage, not at the pleadings stage. Similarly, the Court should not dismiss Plaintiff's claims simply because Guardian references the affirmative defenses it intends to litigate. Having availed itself of Pennsylvania's laws, and having shoehorned class members into its chosen forum, Guardian is estopped from raising most of its arguments, and the Court should allow Plaintiff's class action claims to proceed. Plaintiff has stated a viable theory under the UTPCPL and FCEUA and alleged sufficient facts to support the theory. Accordingly, Guardian's Motion to Dismiss or to Strike Plaintiff's Class Action Allegations should be denied.

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff filed his complaint against Guardian on June 9, 2015 in the Philadelphia Court of Common Pleas, and Guardian removed the case on July 23, 2015. Plaintiff alleges that Guardian unlawfully demands and collects money from consumers in violation of Pennsylvania's UTPCPL, 73 P.S. §§ 201-1 – 201-9.2, and FCEUA, 73 Pa. Stat. Ann. § 2270.1, *et seq*. Plaintiff seeks to represent a class[1] defined as:

> All individuals who reside in the United States, who entered into contracts for home security and/or monitoring services with Guardian Protection Services, and who cancelled the services or terminated their contract, and paid money following the cancellation of services or termination of the contract.

Compl. ¶ 35.

Plaintiff alleges that his experience with Guardian is common to members of the class. In April 2013, Plaintiff entered into a contract with Guardian for home protection services to be provided at his house in Washington, D.C. Compl., ¶ 19, Ex. A. The Contract provided that Guardian would provide security monitoring services for a "3 year initial term" and for a "monthly services fee" of $44.95. *Id*. In September 2014, Plaintiff moved from Washington, D.C. to San Francisco for work, and he sold his house in November 2014. *Id*. ¶¶ 21-22. Around the time he sold his house, Plaintiff cancelled his service with Guardian, providing Guardian with both written and verbal notice of cancellation. *Id*. ¶ 22, Ex. B. Guardian stopped providing services at this time, but continued billing Plaintiff. *Id*. ¶¶ 24, 27-31.

Plaintiff made numerous complaints to Guardian about its continued billing and collection efforts. *Id*. ¶ 25. Plaintiff disputed that any amount was owed. *Id*. ¶ 54 (p. 14).[2] Plaintiff continued to make payments to Guardian despite having cancelled the service because Guardian threatened to send his bill to a collection agent, or make an adverse report on Plaintiff's

---

[1] Guardian states there are more than 17,000 putative class members. *See* ECF Doc. 1, ¶ 13.

[2] Plaintiff's Complaint contains a paragraph numbering error that begins on page 10, following paragraph 39. The references herein are to the actual paragraph number, with the relevant page number on which the paragraph appears.

credit report. *Id.* ¶ 26. In February 2015, Plaintiff paid his bill by check, and wrote on the check, "Paid in Full. Service Terminated 11/18/14." *Id.* ¶ 28, Ex. F.  Despite this, in March 2015, Guardian billed Plaintiff again the next month, and Plaintiff paid the invoice under protest. *Id.* ¶¶ 29-30, Ex. H. Guardian continued to bill Plaintiff, but he stopped paying and was forced to file this suit. *Id.* ¶ 31.

Plaintiff alleges that the Contract he entered into is a standard form contract. *See*, *e.g.*, Compl. ¶ 2. Plaintiff also alleges that under the terms of the Contract, Guardian deceptively characterizes unlawful contractual penalties as payments required for "services" that have been cancelled and are not rendered. *Id.* ¶¶ 2, 11, 15. Guardian enforces these unlawful terms by threatening to report damaging credit information about its customers, and to send unpaid bills to collection. *Id.* ¶ 3, 17, 59 (p. 15). Finally, Guardian unlawfully demands and collects these penalties even from consumers who pay their Contract in full, pay under protest, or otherwise satisfy the terms of their contract. *Id.* ¶¶ 3, 55 (p. 15).

Many of the terms of the Contract are contained in two pages of extremely fine print. *See* Compl., Ex. A, pp. 3-4 ("General Terms and Conditions"). Among the 19 paragraphs contained in the General Terms and Conditions are clauses that purport to allow Guardian to collect what Plaintiff alleges are contractual penalties, which come due after the Contract has been cancelled and services are no longer being provided. For example, the Contract provides in relevant part:

> **SUSPENSION OR CANCELLATION OF SERVICES.** You understand that We may stop or suspend monitoring and other services if: (i) strikes, severe weather, earthquakes,  other Acts of God, or other such events beyond Our control that affect the operation of Our Center or so severely damage Your Premises that continuing service would be impractical; (ii) there is an interruption or unavailability of the telephone service between the System and Our Center or between Our Center and the Authority; (iii) You do not pay the service charge due 10 Us, after We have given You ten (10) days notice that We are canceling service because of non-payment; (iv) We are unable to provide service because of some action or ruling by any governmental authority; and/or (v) You become a debtor in a bankruptcy proceeding. If service is cancelled or this Agreement expires or is terminated for any reason, You authorize Us to remotely disconnect

the Panel from the Center and/or enter Your Premises to disconnect the System from Our monitoring equipment. If service is suspended because You have failed to pay the charges set forth herein, and You ask Us to reactivate the System, You will pay, in advance, Our then prevailing re-connection fee.

**TERMINATION; DEFAULT.** You authorize Us and Our Authorized Dealer to investigate independently and/or share Your credit record and to report Your payment performance under this Agreement to credit agencies and credit reporting services. If You fail to make any payment when due, Your System repeatedly generates false alarms, or You abuse Our staff We may discontinue installation, monitoring and service, terminate this Agreement and recover all damages to which We are entitled including, without limitation, the value of the work performed and the amount due to Us for the unexpired term of the Agreement, including loss of profits. You also agree to pay for any and all collection agency fees, attorneys fees and related costs, whenever this matter is referred to collection and whether or not a suit is filed. We may impose a monthly late fee on all payments more than thirty (30) days past due in an amount equal to $5.00 each until paid, or the maximum amount permitted by Pennsylvania law, whichever is less. The provisions of this Agreement that apply to any claim or suit will survive the cancellation, termination or expiration of this Agreement. You agree to pay Us $25.00 any time Your check, credit card charge, or ACH debit is returned to Us whether for lack of funds or otherwise. Your obligations under this Agreement continue even if You sell or leave the Premises.

Compl., Ex. A, ¶¶ 11-12.

The Contract also includes a separate cancellation clause that states:

For services identified in "C" above the initial term of this Agreement is five (5) years commencing on the day service begins and will, to the extent permitted by law, automatically continue for successive five (5) year terms thereafter unless cancelled by either You or Us in writing at least thirty (30) days before the end of the initial term or any renewal term.

Compl., Ex. A., p. 1, § E.

In addition to a forum selection clause (*Id.* ¶ 17), the Contract also includes a provision selecting Pennsylvania law, which states that "You agree that this Agreement shall be governed by the laws of Pennsylvania without giving effect to its conflict of laws rules." *Id.*, ¶ 19.

III.    <u>ARGUMENT</u>

   A.  <u>Legal Standard</u>

In determining whether to grant a motion to dismiss, the District Court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *D.P. Enters. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984). Taking the allegations as true, the court must then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-79. Determining whether a complaint "states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The key determinant is what a reviewing court may reasonably infer. *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (plausibility "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (citations omitted)).

"[O]nce a claim has been stated adequately, it may be supported by showing <u>any</u> set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007) (emphasis added). Finally, the "complaint must allege facts suggestive of [the proscribed] conduct" (*id.* at 555) and the claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of those elements." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Brown v. Card Service Center*, 464 F.3d 450, 456 (3d Cir. 2006).

Plaintiff's Complaint meets these standards.

### B. The Contractual Forum Selection Clause Does Not Require Dismissal.

Guardian says Plaintiff's claims "must be" dismissed because its contractual forum selection clause purports to require cases to be brought in the Western District of Pennsylvania. Mot. at 8. Guardian has moved the Court to transfer this case to the Western District as part of a Motion to Transfer pursuant to 28 U.S.C. § 1404(a). ECF Doc. No. 6-1. Plaintiff has opposed the Motion and challenges the validity of the forum selection clause, contending that Plaintiff's choice of forum is proper. *See* Plaintiff's Opposition to Guardian's Motion to Transfer. Guardian's Motion to Transfer, moreover, was *not* brought under 28 U.S.C. § 1406, which "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).[3]

Even if the forum selection clause is upheld and the Court concludes venue is proper in the Western District of Pennsylvania, however, it is well settled that dismissal is not required under Fed. R. Civ. P. 12(b)(6). Instead, courts typically choose simply to transfer the matter "in the interests of justice," as Guardian's own authority demonstrates. *See* Mot. at 8, citing *McCusker v. hibu PLC*, 2015 WL 1600066, at *6 (E.D. Pa. Apr. 8, 2015) (transferring matter and declining to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). *See also*, *Sanders-Darigo v. CareersUSA*, 847 F. Supp. 2d 778, 785 (E.D. Pa. 2012) ("While a party may move to dismiss a case pursuant to Rule 12(b)(6) to enforce a forum selection clause, "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss," citing *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001)).

### C. Plaintiff Has Standing to Sue Under The UTPCPL and FCEUA.

Guardian claims that Plaintiff lacks standing to bring claims under the UTPCPL and FCUEA, but this is incorrect. In fact, while Guardian asserts that Plaintiff's UTPCPL and FCUEA claims "are not cognizable by non-Pennsylvania residents" (Mot. at 9), the authority

---

[3] Guardian does not seek dismissal pursuant to Fed. R. Civ. P. 12(b)(3).

Guardian cites is at best incomplete and at worst misleading. Furthermore, Guardian cites *no* authority, nor can it, to support its contention that Plaintiff and other non-Pennsylvania residents are "categorically barred" (Mot. at 9) from asserting UTPCPL claims where a contract contains a choice of law provision like the one at issue here.

Guardian primarily relies on *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006), a case whose reasoning has been either rejected or distinguished by numerous other courts since it was decided. In *Baker*, multiple named plaintiffs brought a putative consumer class action alleging, *inter alia*, UTPCPL claims related to an alleged credit-clean-up scam. Yet, while the *Baker* court acknowledged that "There is no decision by a Pennsylvania state court limiting application of the UTPCPL to Pennsylvania residents," it nevertheless allowed only the named Plaintiff who was a Pennsylvania resident to proceed with the UTPCPL claims. *Id.* at 413. Guardian claims that similar cases holding that non-resident plaintiffs lack standing to assert UTPCPL claims are "legion" (Mot. at 9), but in fact, the reasoning of the *Baker* court, and the weight of authority, actually supports the opposite conclusion.[4]

Even the *Baker* court, for example, recognized an inherent limitation in its holding. The plaintiffs in *Baker* were not bound by a contractual choice of law provision, and thus the court reasoned that limiting the UTPCPL claims to Pennsylvania residents would allow putative class members "to have their claims governed by *state law applicable to their dispute*." *Baker*, 440 F.

---

[4] Guardian cites just three cases besides *Baker* and *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000), that are among the purported "legion," though none of the cases is analogous or even particularly relevant. In *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 259, n.7 (W.D. Pa. 2009), the court noted in *dicta* (in its Rule 23 numerosity analysis) that district courts had *allowed* non-residents to bring UTPCPL claims. In *In re Adelphia Commc'ns Corp.*, 331 B.R. 93 (S.D.N.Y. 2005) a New York bankruptcy court held in a Chapter 11 bankruptcy proceeding that "the UTPCPL does not protect a consumer, like [the plaintiff] Dibbern, who neither resides in nor obtains goods or services from Pennsylvania." *Id.* at 97. Guardian also cites *Moore v. Johnson & Johnson*, 2014 WL 7740498, at *5 (E.D. Pa. Feb. 4, 2014), but the case does not appear to be relevant, and it does not "collect cases" on UTPCPL standing by non-Pennsylvania residents as Guardian claims. Taken individually or collectively, these cases do not stand for the proposition asserted by Guardian.

Supp. 2d at 414 (emphasis added). Here, Guardian has already selected Pennsylvania law as the "state law applicable to the dispute" of all class members. Thus, the reasoning in *Baker* actually supports Plaintiff's contention that a national class is appropriate because Guardian has contracted with all class members to apply Pennsylvania law to their agreements.

Furthermore, since *Baker* was decided, courts – including this one – have made clear that non-Pennsylvania residents *may* proceed with claims under the UTPCPL where there is a "sufficient nexus" with Pennsylvania. For example, in *Haggart v. Endogastric Solutions, Inc.*, 2011 WL 466684 (W.D. Pa. Feb. 4, 2011), the court denied a Rule 12(b)(6) motion to dismiss based on the same "residency" argument Guardian makes here. *Haggart* involved a North Carolina resident suing a Washington-based corporation under the UTPCPL following an unsuccessful surgery in Pittsburgh. The court held:

> Defendant relies on *Baker,* 440 F.Supp.2d at 413, which held that the Pennsylvania UTPCPL provides a remedy only to citizens of Pennsylvania. *Baker,* however, involved a federal class action where numerous plaintiffs all asserted claims under the Pennsylvania UTPCPL. The Court here is not persuaded by *Baker* where the only plaintiff presently before the Court is one who has a sufficient nexus with Pennsylvania. Therefore, Defendant's Motion to Dismiss Plaintiff's Pennsylvania UTPCPL claim will be denied.

*Haggart* at *7.

*Haggart* has since been followed or cited favorably by numerous other courts. *See Garland v. ServiceLink L.P.*, 2013 WL 5428716, at *3 (D. Md. Sept. 25, 2013) ("Non–Pennsylvania residents may assert a claim under the UTPCPL if the injury occurred in the state or they were engaged in a transaction within the state."); *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 575 (E.D. Pa. 2011) ("At the very least, a plaintiff must allege a 'sufficient nexus' with Pennsylvania..."); *Mikola v. Penn Lyon Homes, Inc.*, 2008 WL 2357688, at *3 (M.D. Pa. June 4, 2008) (allowing Florida residents to bring suit under UTPCPL and explaining that the UTPCPL protects nonresidents engaged in transactions within Pennsylvania).

The *Haggart* court's reasoning is also consistent with the principles of consumer protection that the *Baker* court recognized. As this Court has noted, "State consumer fraud acts are designed to either protect state residents *or protect consumers engaged in transactions within the state*." *Lyon v. Caterpillar*, *supra*, 194 F.R.D. at 215 (emphasis added). Thus, courts recognize that the purpose of consumer protection laws such as the UTPCPL is not simply to protect residents, but also to protect all consumers who are affected by conduct that takes place within the state.[5]

Here, Guardian concedes that the unlawful conduct challenged by Plaintiff occurred in Pennsylvania. *See*, *e.g.*, Motion to Transfer (ECF Doc. 6-1) at p. 4 ("Guardian's communications, contracts, and business decisions are formed, implemented, and disseminated from Warrendale, Pennsylvania."; *id.* at p. 13 (identifying its Pennsylvania headquarters as the place "where Guardian's communications were written and sent, and where its business decisions allegedly forming the substance of Plaintiff's claims occurred."). Moreover, though Plaintiff does not reside in Pennsylvania, his Contract provides that Pennsylvania law shall govern its interpretation. Thus, Guardian has effectively ordained that Plaintiff's claims proceed under its chosen state law. Guardian cannot be allowed to disclaim its own choice of law by asserting that it would prejudice the rights of consumers not to be able to pursue state-specific remedies.[6] In sum, Plaintiff has standing to pursue his UTPCPL and FCEUA claims and these claims should not be dismissed.

---

[5] The FCEUA expressly contemplates application to individuals who do not reside in Pennsylvania. The FCEUA defines the term "consumer," and then notably omits use of the term in subsections 5 and 6 of § 2270.4. In context, therefore, the protections of the FCEUA apply to "any person" who is subjected "to debt collection activities of creditors in this Commonwealth." Plaintiff alleges, and Guardian does not contest, that Guardian is a "creditor in the Commonwealth" (Compl. ¶ 51), so it is governed by all of the provisions of § 2270.4(b).

[6] Because Guardian has chosen the applicable law governing the challenged Contracts, Plaintiff will not need to assert 50 different state law claims. Thus, to the extent federal district courts have been reluctant to allow national consumer protection class action suits to proceed (*see Baker*, 440 F.Supp.2d at 414), no such issue arises here because of the Contract provision selecting a single state's law.

**D.  Guardian Has Contractually Disclaimed Pennsylvania's Choice Of Law Rules.**

A court will undertake a choice-of-law analysis only when a contract "does not contain an express choice-of-law provision (or indicate that the parties implicitly agreed to be bound by a particular state's law)."[7] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). Here, Guardian's Contract provides in part, "You agree that this Agreement shall be governed by the laws of Pennsylvania without giving effect to its conflict of laws rules." Compl., Ex. A ¶ 19. Despite this, Guardian contends that "Pennsylvania's choice of law rules do not allow application of Pennsylvania law." Mot. at 10. Guardian also claims that Plaintiff's UTPCPL and FCEUA claims are "foreclosed." *Id.* Guardian's contention ignores the plain language of the Contract it drafted, and the authority it cites fails altogether to address the existence of a choice of law provision and the disclaimer of Pennsylvania's conflict of law rules in the Contract. As such, Pennsylvania's conflict of laws rules do not apply here and there is no basis to dismiss Plaintiff's claims on that ground.

Even if the Court were to consider the choice of law rules, however, Plaintiff's claims would still survive because Guardian has not identified any conflict of laws and Guardian's conduct in Pennsylvania is significant enough to apply Pennsylvania law.  "[T]the first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws." *Hammersmith*, 480 F.3d at 230. "If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.* Here, Guardian has not identified any conflict.

---

[7] Like the other cases cited by Guardian, this Court's ruling in *In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 317 (E.D. Pa. 2011) (cited by Guardian as *AFSCME v. Cephalon, Inc.*) is not on point. *Actiq* did not involve a contractual choice of law clause like the one at issue here. In *Actiq*, the Indiana Carpenters Welfare Fund (ICWF) and another plaintiff sued a Pennsylvania-based drug marketer for deceptive marketing of a cancer drug. The defendant moved to dismiss the claims against ICWF, and the court, applying choice of law principles, held that the ICWF's claims should be analyzed under Indiana's consumer protection statute because its members were from another state.

Federal courts sitting in diversity jurisdiction "apply the choice-of-law rules of the forum state." *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012), citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Amica Mut. Ins. Co. v. Fogel,* 656 F.3d 167, 170–71 (3d Cir.2011). "Pennsylvania applies the…flexible, 'interests/contacts' methodology to contract choice-of-law questions." *Hammersmith*, 480 F.3d at 226–27. This analysis requires the court to "weigh the contacts on a qualitative scale according to the policies and interests underlying the particular issue." *Pac. Employers Ins. Co.*, 693 F.3d at 437. As set forth above, Guardian admits that the conduct Plaintiff challenges was "formed, implemented, and disseminated" in Pennsylvania. Thus, though Plaintiff did not live in Pennsylvania, Guardian's unlawful contracting and collection practices were engineered in Pennsylvania. Therefore, the Court could apply Pennsylvania law if a conflict of laws was found.

### E.  Plaintiff Has Stated a Claim Under the UTPCPL and FCEUA.

Guardian claims that Plaintiff has not pled a claim under the UTPCPL because he has failed to allege 1) "how express contractual terms are deceptive" or 2) how he "justifiably relied on those explicit terms" or 3) how he "suffered any ascertainable loss as a result of those explicit terms." Mot. at 11. Guardian also contends that Plaintiff's "entire argument" is merely that "form contracts are unfair" (Mot. at 11, n. 6), but this conclusion, and each of its underlying arguments, miss the mark. Plaintiff has adequately pled the elements of a UTPCPL claim based on Guardian's deceptive contracting and collection practices.

### 1.    The Complaint Contains Sufficient Allegations of Deceptive Conduct.

In considering this Motion, the Court should keep in mind the purpose of the UTPCPL. "The Pennsylvania Supreme Court has interpreted the purpose of the UTPCPL to attempt 'to place on more equal terms seller and consumer' and 'to ensure the fairness of market transactions.' *Commonwealth by Creamer v. Monumental Properties, Inc.,* 329 A.2d 812, 816 (Pa. 1974). Likewise, Pennsylvania courts have construed the UTPCPL liberally to effectuate its purpose." *Lites v. Great Am. Ins. Co.*, 2000 WL 875698, at *2 (E.D. Pa. June 23, 2000). "To

assert a cause of action under the UTPCPL, a defendant's alleged conduct must rise to the level of and unfair or deceptive practices as defined under 73 P .S. § 201–2(4)." *Id.* (citations omitted).

In 1996, the UTPCPL was amended to revise Section 201–2(4)(xxi) in order to add "deceptive conduct" as a prohibited practice. *See* Act of Dec. 4, 1996, P.L. 906, No. 146, § 1 (effective Feb. 2, 1997). The current catchall provision proscribes "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi) (emphasis added). Pennsylvania state courts have endorsed the state Supreme Court's directive to interpret the UTPCPL liberally in order to effectuate its purposes of consumer protection. *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 153 (2012). Accordingly, "Most Pennsylvania federal courts have similarly concluded the 1996 amendment lessened the degree of proof required under the UTPCPL catchall provision." *Id.*

Plaintiff's complaint easily satisfies these pleading standards because he alleges that Guardian's conduct is deceptive in multiple ways. First, Plaintiff alleges that Guardian's contracting conduct is deceptive. Plaintiff was presented with a standard form Contract that is replete with unreasonable and unlawful one-sided terms that were presented to Plaintiff in extremely fine print. Compl. ¶ 2, Ex. A. These "express" terms are, in fact, not as straightforward as Guardian suggests (and many are unenforceable despite being presented as such). For example, the Contract contains provisions related to both "cancellation" (Compl., Ex. A, ¶11) and "termination" (*Id.* ¶ 12). The terms are not defined in the Contract. The "cancellation" provision, moreover, contains no mention of any continued obligation to pay. Under the "termination" provision, on the other hand, the Contract provides for a unilateral right of termination (by Guardian) in which the Contract purports to leave customers on the hook for:

> all damages to which We are entitled including, without limitation, the value of the work performed and the amount due to Us for the unexpired term of the Agreement, including loss of profits. You also agree to pay for any and all collection agency fees, attorneys fees and related costs, whenever this matter is referred to collection and whether or not a suit is filed…Your obligations under this Agreement continue even if You sell or leave the Premises."

*Id.* ¶ 12. Taken together, these terms are deceptive because they result in the imposition of unlawful contractual penalties that effectively render the contract terminable only by Guardian in spite of provisions to the contrary.

Plaintiff alleges that after a customer cancels his service with Guardian, and Guardian stops providing any services, Guardian continues to demand and collect payment in amounts that "bear no relationship to any amount lost or cost incurred by Guardian due to a customer's termination of services." *Id.* ¶ 15. Under Pennsylvania law, "A penalty is said to be fixed not as a 'pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach'." *In re Plywood Co. of Pa.*, 425 F.2d 151, 155 (3d Cir. 1970); *see also Holt's Cigar Co. v. 222 Liberty Associates*, 591 A.2d 743, 749 (Pa. Super. 1991) (same). Here, the Contract contains conflicting provisions and threats of collection and adverse credit reporting, which when coupled with Guardian's actual collection practices, are designed to impose penalties on any customer with the temerity to cancel services. The deception Guardian engages in is to present the possibility of cancellation but to engage in collection practices that impose penalties under the guise of "security services." The resulting penalty imposed on class members is at least the full value of the contract, even though Guardian no longer provides any services and the amount collected bears no relationship to any loss. Plaintiff alleges that the money Guardian collects from class members is, in fact, an unlawful penalty that Guardian has deceptively characterized as a charge for "security services."[8]

---

[8] Though Plaintiff alleges that Guardian's deceptive practices are aided by the unfairness of its Contract, Guardian mistakenly (and repeatedly) claims that Plaintiff's claims are merely breach of contract claims "masquerading" as deceptive trade practices claims. *See*, *e.g.*, Mot. at 1, 11, n.6, 13, n.7, 16. Guardian claims without authority that Plaintiff's theory of deceptive conduct cannot proceed because it involves a contract with "express terms." Mot. at 16. However, Plaintiff's claims do not sound in contract, and it is well settled that non-contract claims may proceed as long as the contract is "collateral" to the wrong ascribed to the defendant. *See Mirizio v. Joseph*, 2010 Pa. Super. 70, ¶ 4, 4 A.3d 1073, 1080 (2010).

14

Second, Guardian's conduct in collecting these penalties is deceptive. The FCEUA makes unlawful certain acts and practices by creditors that are deceptive, unfair, or anti-competitive. 73 Pa. Stat. Ann. § 2270.2. Specifically, the statute prohibits creditors from "using any false, deceptive or misleading representation or means" or from using "unfair or unconscionable means" to collect or attempt to collect any debt. *Id.* at § 2270.4(b)(5)-(6). As Plaintiff alleges in his complaint, Guardian claims that class members owe money under the terms of contracts that have been cancelled, and after Guardian has stopped providing anything of value under the contract. Compl. ¶ 60 (p. 15). Guardian also demands and collects payment from consumers after they have fully satisfied the terms of their contracts. *Id.* ¶¶ 3, 55 (p. 15). Plaintiff alleges, for example, that in February 2015, after cancelling his service, he made a final payment to Guardian. Compl. ¶ 28. Despite this, Guardian continued to bill Plaintiff, and ultimately demanded and collected additional payment from him even though it was not owed and could not be lawfully collected. *Id.* ¶¶ 24-31. Guardian's collection tactics are deceptive in that they are unlawful and intended to mislead Plaintiff and other class members into believing a debt is owed when, in fact, it is not. *Id.* ¶ 50 (p. 13-14).

### 2.  Guardian Misstates the Pleading Standard for Reliance.

Guardian mischaracterizes a large body of law that has established the pleading requirements under the UTPCPL's catch-all provision. Guardian asserts that Plaintiff has failed to state a claim because he has not pled justifiable reliance. Motion at 13. But Guardian's entire argument ignores or overlooks controlling Pennsylvania appellate court decisions that have rejected the pre-amendment standard Guardian advances here. Simply put, a plaintiff does not need to plead justifiable reliance for the kind of deception claims at issue here, which arise from a common practice of unlawful billing and collection imposed system-wide on an existing group of customers.  *See*, *e.g.*, *In re Community Bank of Northern Virginia Mortg. Lending Practices Litig.*, __ F.3d ___, 2015 WL 4547042 at *21 (3d Cir. July 29, 2015) (agreeing that "where proof of the RICO violation is demonstrated through common evidence of a common scheme, reliance may be inferred on a classwide basis"); *Bennett v. A.T. Masterpiece Homes*, 40 A.3d 145, 152-56

15

& n.5 (Pa. Super. 2012) (holding that the addition of the word "deceptive" in the 1996 UTPCPL

amendment establishes that the elements of common law fraud need not be pled or proved, and

that it was proper to instruct the jury that to be "deceptive," conduct need only be "capable of

being interpreted in a 'misleading way'"); *Toth v. Northwest Savings Bank*, No. GD-12-008014,

2013 WL 8538695 at *8-*10 (C.P. Allegh. Mar. 1, 2013) (analyzing Pennsylvania law and

holding that where consumers have paid money because of an allegedly deceptive practice, that

payment shows causation and "a finding of reliance is not needed to establish an ascertainable

loss.").

These holdings derive from the precise language of the UTPCPL, as amended, and the

private-action standing provision of 73 P.S. § 201-9.2. That section provides, in pertinent part:

> Any person who purchases or leases goods or services primarily
> for personal, family or household purposes and thereby **suffers**
> **any ascertainable loss of money or property**, real or personal, **as**
> **a result of the use or employment by any person of a method,**
> **act or practice declared unlawful by section 3** [defining unfair
> methods of competition and unfair or deceptive acts or practices]
> may bring a private action to recover actual damages or on
> hundred dollars ($100), whichever is greater.  * * *

*Id.*  (emphasis added)

The plain language of this provision makes clear that causation ("as a result of") must be

alleged by a consumer; it does not make clear (plainly or otherwise) that a consumer must have

directly and justifiably relied on a specific fraudulent misstatement to state a claim.[9] *See Toth,*

*supra.* In fact, the trial court's decision in *Toth v. Nw. Sav. Bank,* is instructive. In *Toth,* Judge

---

[9] Even if the Court imposed a requirement for justifiable reliance, Plaintiff would have satisfied
such a requirement. Plaintiff's complaint states that he made payments to Guardian after he
cancelled services because Guardian continued to send him bills and demand payment. Compl.
¶¶ 18-31, 59 (p. 15). The complaint also states in relevant part that Plaintiff acted because of
Guardian's deceptive conduct in threatening to report non-payment for purported debts that
were, in fact, not owed. Compl. ¶ 26 ("Because Plaintiff was concerned that Guardian would
send his bill to a collection agent, or make an adverse report on Plaintiff's credit report, Plaintiff
continued to pay Guardian."). Thus, Plaintiff has alleged that he relied on Guardian's
misrepresentations that he owed money, and that it would enforce its collection efforts by
making adverse credit reports for non-payment. Compl., Ex. A, p. 1.

Wettick analyzed the holdings of *Toy*, *Yocca* and *Weinberg* and explained why the UTPCPL does not require proof of reliance where, as here, the class is comprised of persons "who sustained actual losses." *Toth v. Nw. Sav. Bank*, *supra*, 2013 WL 8538695, at *4-5 ("a showing of actual reliance should not be required when ascertainable losses necessarily flow from the fraud or deceit…The Consumer Protection Law should not be construed to require [a consumer] to offer speculative testimony as to whether they would have purchased [the food or service] even if they had known they would be cheated."). The logic of *Toth* is found in scores of federal and state decisions, which have likewise rejected Guardian's misdirected argument about justifiable reliance.

For example, District Courts and the Third Circuit have repeatedly held that consumers who are victimized by deceptive business practices need not plead reliance under the amended version of § 201-2(4)(xxi). *See*, *e.g.*:

- *Belmont v. MB lnv. Partners*, 708 F.3d 470, 498 (3d Cir. 2013) ("It appears that a UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct in that a plaintiff does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b).") (quoting *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 807 n.5 (E.D. Pa. 2011 ));

- *Slemmer v. McGlaughlin Spray Foam Insulation*, 955 F. Supp. 2d 452, 463 (E.D. Pa. 2013) ("Because a plaintiff need not plead fraud under the UTPCPL, a plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b).") (citation omitted);

- *Morgan v. World Alliance Fin. Corp.*, 2013 U.S. Dist. LEXIS 13870, at *17 (E.D. Pa. Jan. 31, 2013) (observing that "[t]he standard for alleging deceptive practices under the UTPCPL is less strict than that for alleging fraud in that it does not require allegations of scienter");

- *Genter v. Allstate Property and Cas. Ins.*, 2011 U.S. Dist. LEXIS 67840, at*13-14 (W.D. Pa. June 24, 2011) (determining that amendment to catchall provision adding  prohibition of deceptive conduct allows plaintiff to succeed under catchall section by pleading either common law fraud or deceptive conduct);

17

- *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 n.7 (E.D. Pa. 2010) (agreeing with the "courts in this district [that] have held that the 1996 amendment to the catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits plaintiffs to proceed without satisfying all of the elements of common-law fraud");

- *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010) ("I agree…that the addition of the word 'deceptive,' along with the Pennsylvania Supreme Court's broad construction of the PUTPCPL as a remedial law designed to address both fraudulent and unfair business practices, renders previous interpretations requiring plaintiffs to allege common law fraud erroneous.");

- *Zafarana v. Pfizer*, 724 F. Supp. 2d 545, 557 n.3 (E.D. Pa. 2010) ("[W]e will not require Plaintiffs to establish conduct amounting to common law fraud in order to state a claim under the catchall provision of the UTPCPL, even though the Pennsylvania Supreme Court has not yet interpreted this provision as amended.");

- *Lorah v. SunTrust Mortg.*, 2010 U.S. Dist. LEXIS 134325, at *18 (E.D. Pa. Dec. 17, 2010) ("This Court joins many (although not all) courts in this District in predicting that the Pennsylvania Supreme Court would permit a plaintiff who alleges 'deceptive' conduct to proceed without proving all of the elements of common law fraud.");

- *Gidley v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 118246, at *9-10 (E.D. Pa. Dec. 17, 2009) ("I find that the catch-all provision only requires pleading all of the elements of common law fraud with particularity if plaintiffs allege fraudulent conduct, but not for any alleged deceptive conduct.");

- *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451,469 (E.D. Pa. 2009) ("[F]or a claim under the catchall provision of the UTPCPL, if a plaintiff alleges deceptive conduct, a plaintiff need not allege the elements of common law fraud");

- *Birchall v. Countrywide Home Loans*, 2009 U.S. Dist. LEXIS 106813, at *31 (E.D. Pa. Nov. 12, 2009) ("[T]he Court will join others in this district to permit a plaintiff who alleges deceptive conduct to proceed without alleging all of the individual elements of common law fraud.");

- *Davis v. Many Life Ins.*, 2008 U.S. Dist. LEXIS 69736, at *15-16 (W.D. Pa. Sept. 2, 2008) ("a plaintiff may allege deception, as opposed to common law fraud, to set forth an actionable claim under the UTPCPL.") (citing *Grimm v. Washington Mutual Bank*, 2008 U.S. Dist. LEXIS 55628 (W.D. Pa. July 22, 2008));

18

- *Hansford v. Bank of Am.*, 2008 U.S. Dist. LEXIS 65502, at *38 (E.D. Pa. Aug. 22, 2008) ("Because the UTPCPL must be construed liberally, the Court will join other courts in this district to permit a plaintiff who alleges deceptive conduct to proceed without proving all of the elements of common law fraud.") (internal citation omitted);

- *Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008) (accepting view that plaintiff can state claim under post-1996 catchall provision by alleging deceptive activity);

- *Chiles v. Ameriquest Mortg. Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) ("The UTPCPL must be construed liberally. This Court will therefore adopt the view that in order for the addition of the terms 'or deceptive' to be given effect, all elements of common law fraud need not be proven if Plaintiff alleges deceptive conduct.") (internal citation omitted);

- *Figard v. PHH Mortg. Corp. (In re Figard)*, 382 B.R. 695, 715·16 (Bankr. W.D. Pa. 2008) ("This Court too agrees with the sound reasoning of the Commonwealth Court, and will not require a plaintiff to prove the elements of common law fraud to maintain a cause of action under the catchall provision of the Consumer Protection Law");

- *Mertz v. Donzi Marine,* 2007 U.S. Dist. LEXIS 15708, at *29 (W.D. Pa. 2007) ("We find the analysis of the Commonwealth Court in *Com. ex rel Corbett v. lvfanson* to be the correct interpretation of what must be proven in a § 201-2(4) (xxi) claim. Accordingly, contrary to the Defendants' argument, Plaintiff does not have to prove that he relied on statements or omissions by the Defendants that rise to the level of fraudulent activity");

- *Christopher v. First Mut. Corp.,* 2006 U.S. Dist. LEXIS 2255, at *9 (E.D. Pa. Jan. 20, 2006) ("**It** is no longer necessary for a plaintiff to plead all of the elements of common law fraud to recover under the UTPCPL catchall provision.");

- *In re Fisher,* 320 B.R. 52, 71 (Bankr. E.D. Pa. 2005) (determining that "word 'deceptive' within the catchall provision necessitates a less restrictive standard than proof of fraud");

In sum, the great weight of authority does not support Guardian's contention that Plaintiff must plead justifiable reliance. Because Plaintiff has satisfied the pleading requirements under the UTPCPL, Guardian's motion should be denied.

### 3.      Plaintiff Has Pled An Ascertainable Loss.

In spite of a detailed recitation of Plaintiff's payment history contained in the Complaint, Guardian asserts that Plaintiff has not alleged any loss or damages from Guardian's deceptive conduct. Mot. at 17. This is plainly incorrect. Plaintiff alleges that he lost money by paying unlawful contractual penalties that he would not otherwise have paid but for Guardian's deceptive conduct. Compl. ¶¶ 18-31. Plaintiff's payments were made – as were the payments of each of the 17,000-plus class members – *after* the contract was cancelled, after services were no longer being rendered, and after additional payment was unnecessary.[10] On a motion to dismiss, the Court must credit Plaintiff's theory that Guardian deceived consumers by mischaracterizing such unlawful penalties as charges for "security services" owed under the Contract. If it does, then it must conclude that Plaintiff has adequately pled that Guardian's deceptive payment demands (i.e. its collection scheme) directly resulted in an ascertainable loss for Plaintiff and members of the class.

### F.  Plaintiff's FCEUA Claim Is Adequately Pled.

Plaintiff has properly pled the allegations necessary to sustain his claim that Guardian's conduct violates the FCEUA because, *inter alia*, Guardian has improperly attempted to collect debts that are not owed.

Plaintiff alleges that in February 2015, in response to another attempt by Guardian to collect for services that had been cancelled, "Plaintiff remitted payment in full to Guardian, noting on his check that the payment was for the full amount of the contract, and that he had

---

[10] The post-cancellation payments that Plaintiff and class members paid make their losses easily ascertainable, as well as distinguishable from unrealized losses such as liens (*see Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 180 (3d Cir. 2015), or unpaid debt (*see Kern v. Lehigh Valley Hosp., Inc.*, 2015 Pa. Super. 19, 108 A.3d 1281, 1284 (2015)) that other courts have concluded were insufficient under the UTPCPL. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) ("Payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed. Fraud claims of this type may thus be appropriate candidates for class certification…").

cancelled service on November 18, 2014. Guardian cashed his check that month, and the payment constituted an accord and satisfaction of all amounts owed by Plaintiff." Compl. ¶ 55 (p. 14-15.) "An accord and satisfaction is a substitute contract between a debtor and creditor for the settlement of a debt by some alternative performance other than full payment of the debt. Because an accord and satisfaction is a contract, it requires the elements of a contract: offer, acceptance and consideration. The debtor's offer of a full payment check and the creditor's negotiation of that check usually constitute the offer and acceptance of an accord and satisfaction. The consideration is the resolution of an unliquidated or disputed claim." *Occidental Chem. Corp. v. Envtl. Liners, Inc.*, 859 F. Supp. 791, 793 (E.D. Pa. 1994). Plaintiff has thus pled all the elements of an accord and satisfaction: he disputed that any amount was owed (Compl. ¶54 [p. 14]); he offered a payment in full (*Id.* ¶ 55); and Guardian cashed his check (*Id.* ¶ 28, Ex. F). Guardian then continued to bill Plaintiff and enforced its charges for "security services" by threatening to report Plaintiff's failure to pay to credit bureaus.

Guardian disputes that its negotiation of Plaintiff's check constitutes consideration, though it concedes that there is a dispute as to the amount owed. Mot. at 19. A motion to dismiss is not the time, however, to litigate Guardian's affirmative defenses. Based on the facts alleged, Plaintiff has pled a claim under the FCEUA. Furthermore, because a violation of the FCEUA "shall constitute a violation of [the UTPCPL]," 73 Pa. Stat. Ann. § 2270.5(a), Plaintiff's UTPCPL claims must also survive. "Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use the remedial provision of the UTPCPL, 73 Pa. Cons. Stat. § 201–9.2, to obtain relief for violations of the FCEUA." *Donohue v. Reg'l Adjustment Bureau, Inc.*, 2013 WL 1285469, at *8 (E.D. Pa. Mar. 28, 2013) (denying a motion to dismiss UTPCPL and FCEUA claims).

### G.  It is Premature to Strike Class Allegations.

Guardian's motion to strike Plaintiff's class action allegations is premature and unfounded, and such a request is directly contrary to this Court's precedents. *See Korman v.*

21

*Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) ("motions to strike class allegations are premature and…the proper avenue is to oppose the plaintiff's motion for class certification."). As a result, this Court should allow these proceedings to unfold in ordinary fashion and address class certification only after the parties have had discovery and the opportunity to brief the issues. *See Weiss v. Regal Collections*, 385 F.3d 337, 347-48, n.17 (3d Cir. 2004) (emphasizing the importance of discovery as part of class certification and allowing the class action process to 'play out' according to the directives or Rule 23).

Guardian's request to strike the class allegations demonstrates a fundamental misunderstanding of both class action procedures under Rule 23 and the governing law. The Third Circuit has acknowledged that there are a "rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," although, "[i]n most cases, some level of discovery is essential." *Landman & Funk PC v. Skinder–Strauss Assoc.,* 640 F.3d 72, 93, 93 at n. 30 (3d Cir.2011). Furthermore, class allegations may be stricken only when *no amount of discovery* will demonstrate that the class can be maintained. *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.,* 284 F.R.D. 238, 244 (E.D. Pa. 2012) (citing *Thompson v. Merck & Co., Inc.,* 2004 WL 62710 (E.D. Pa. 2004)); *see also Woodard v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 182 (M.D. Pa. 2008) (noting that a "district court will strike class allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action"). In *Landman*, the Court held that "delving into the propriety of class certification was the wrong focus at that early stage of the proceeding." 640 F.3d at 92. Nothing here warrants a different result.

Thus, Guardian's motion to strike necessarily proceeds on grounds that class certification is *impossible* – a standard it cannot meet. Guardian contends that it is already evident that "mini trials" are required to determine if a class could "possibly be certified." Mot. at 20. Yet the only purported issues Guardian identifies that are specific to Plaintiff are his "refusal" to make a lump sum penalty payment, his payment made under protest, and the fact that he is arguing that he is

entitled to accord and satisfaction. *Id.* at 19. None of these facts demonstrate any conflict between Plaintiff and the class, nor are any so individualized that the Court must conclude, as a matter of law, that class treatment is impossible. In fact, Plaintiff's claims are typical of the claims of other class members because "[c]ases challenging the same unlawful conduct that affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Carroll v. Stettler*, 2011 WL 5008349, at *2 (E.D. Pa. Oct. 19, 2011). Moreover, Plaintiff's claims do not turn on these facts, but on *Guardian's* deceptive conduct.

In addition to these insignificant facts, Guardian recirculates its argument that Plaintiff's class claims may only proceed if Plaintiff can prove "justifiable reliance." Mot. at 21-22.[11] Unlike the cases cited by Guardian in which courts have declined to certify (or have decertified) UTLCPL claims, however, Plaintiff's case is well suited to class treatment because Plaintiff and the class can easily meet such a reliance standard. Because the class is comprised of only of those individuals "who cancelled the services or terminated their contract, *and paid money following* the cancellation of services or termination of the contract" (Compl. ¶ 35, emphasis added), any payments made for unrendered services are plainly the result of Guardian's deceptive demands for payment. In other words, unlike the cases holding that reliance required an individualized inquiry, a post-cancellation payment shows reliance itself. *In re Community Bank of Northern Virginia Mortg. Lending Practices Litig.*, 2015 WL 4547042 at *21; *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 120. In this respect, Plaintiff's UTPCPL class claims are similar to the claims certified in *Allen v. Holiday Universal*, 249 F.R.D. 166 (E.D. Pa. 2008). In granting class certification, the *Allen* court distinguished other UTPCPL cases in which courts had found individualized issues:

> As opposed to the factual questions at issue in *Piper I* and *Williams,* where it was unclear which, if any, class members were exposed to the alleged

---

[11] Plaintiff will not repeat his argument from above about the application of *Hunt* and its progeny, but contends that Guardian's analysis remains flawed for the reasons stated above.

misconduct, here the proposed Class includes *only* those persons who purchased health club memberships and who paid in excess of the alleged "reasonable" amount. By definition, the proposed class excludes persons who did not pay an allegedly excessive initiation fee and thus did not suffer an ascertainable loss. Likewise, there is no question here as to whether, if proven, the alleged misconduct resulted in a monetary loss for each person who purchased a health club membership. Unlike unfair debt collection practices that may unlawfully harass the debtor without causing any monetary damage, an excessive initiation fee that is paid by a consumer necessarily causes an ascertainable monetary loss.

*Id.* at 193.

### H.  If the Court Concludes It is Necessary, Plaintiff Should Be Granted Leave to Amend

The Complaint states valid claims for relief, and pleads all elements required for a class action on behalf of similarly-situated individuals. If, however, the Court discerns any defect in the pleading, then Plaintiff requests and should be granted leave to amend to address the Court's concerns. *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("the general rule is that leave to amend 'shall be freely given when justice so requires.' Fed.R.Civ.P. 15(a).").[12]

### IV.  **CONCLUSION**

For all of the foregoing reasons, the Motion to Dismiss should be denied.

        Respectfully submitted,

Dated: August 21, 2015        /s/ *Michael D. Donovan*
        Michael D. Donovan
        Noah Axler
        DONOVAN AXLER, LLC

---

[12] Guardian's focus on a hypothetical, extreme amendment to add claims under the consumer protection statutes of 50 states (*see* Mot. at 11, 23) is, at best, premature. *See Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180-183 (3d Cir. 2014) (holding that the proper time to consider choice of law issues for a nationwide litigation class was at the class certification stage). Even if a "50-state" amendment has been found to be disfavored, Plaintiff should not be preemptively foreclosed from seeking to amend the complaint in any appropriate manner if the Court finds that the amendment would not be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997) (reversing a denial of leave to amend for district court to consider proposed amendment).

1055 Westlakes Drive, Suite 155
Berwyn, PA 19312
(610) 647-6067

Christian Schreiber (Cal. Bar No. 245597)
*Pro Hac Vice*
CHAVEZ & GERTLER LLP
42 Miller Avenue
Mill Valley, CA 94941
(415) 381-5599

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF system and will therefore be served by electronic means via the Court's ECF Notification system upon all counsel of record.


*s/ Michael D. Donovan*

Michael D. Donovan

Date: August 21, 2015